**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DINESH CHAUHAN, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>LONGFIN CORP., VENKATA S MEENAVALLI, and VIVEK KUMAR RATAKONDA,<br><br>        Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Dinesh Chauhan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Longfin Corp. ("Longfin" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that

1

substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Longfin securities between December 13, 2017 and April 2, 2018, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a significant portion of Defendants' actions and the subsequent damages, took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Longfin securities during the Class Period and was economically damaged thereby.

7.    Defendant Longfin is a finance and technology complaint that specializes in the structure trade finance solutions and physical commodities finance solutions. Longfin is incorporated in Delaware. The Company went public on the U.S. stock market on or about December 13, 2017. The Company's principal executive offices are located at 16-017, 85 Broad Street, New York, NY 10004. Longfin's common stock is currently traded on The NASDAQ Capital Market ("NASDAQ") under the ticker symbol "LFIN".

8.    Defendant Venkata S Meenavalli ("Meenavalli") has been the Chief Executive Officer ("CEO") of the Company throughout the entire Class Period.

9.    Defendant Vivek Kumar Ratakonda ("Ratakonda") has been the Chief Financial Officer ("CFO") of the Company throughout the entire Class Period.

10.    Defendants Meenavalli and Ratakonda are collectively referred to herein as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     Longfin is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Longfin under *respondeat superior* and agency principles.

14.     Defendants Longfin and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

15.     Longfin went public by using the Reg. A+ provision of the Jumpstart Our Business Startups Act of 2012 ("JOBS Act"). This regulation allows companies with less than $1 billion in annual sales to avoid some accounting and disclosure requirements imposed on bigger companies. However, companies under Reg. A+ are still required to include accurate reporting.

16.     On March 13, 2017, Longfin filed its Form 1-A registration statement with the SEC. The Form 1-A was subsequently amended several times prior to the initial public offering ("IPO") in December 2017 with the final version being filed with the SEC on November 3, 2017 (collectively, "Registration Statement"). The IPO offered 10 million shares at $5.00 per share. The Company ended up selling 1,140,989 shares at $5.00.

17.     The Russell U.S. Equity Indexes states requirements for listing to include:

5.10    **Minimum available shares / float requirement**
5.10.1 Companies with only a small portion of their shares available in the marketplace are not eligible for the Russell indexes. ***Companies with 5% or less will be removed from eligibility.*** When unavailable shares are determined to be 94.5% or greater, this figure will be rounded to 95%. See Section 5: Adjustments to Members' Shares Outstanding (Float), for details on calculations of available shares.

(Emphasis added).

## Materially False and Misleading
## Statements Issued During the Class Period

18.     The Class Period begins on December 13, 2017 when Longfin began trading on NASDAQ. The Registration Statement was signed by Defendants Meenavalli and Ratakonda. The Company's Registration Statement discussed Longfin's directors and officers. The Registration Statement stated that Defendant Meenavalli was 45 years old. Further, the Registration Statement included Sarah Altahawi as the Associate Vice President of Longfin and included her biography, stating in relevant part:

**Sarah Altahawi – Associate Vice President**

Ms. Altahawi has more than three years of investment banking experience at a leading investment banking house in New York. She is a versatile player in taking on varied roles from relationship management to facilitate highly effective marketing/ PR plans. Ms. Sarah has is a potent leader in her work  Ms. Sarah is responsible for identifying, securing offerings, merger & acquisition deals by way of gathering, analyzing and interpreting complicated numerical information. Ms. Sarah led worldwide syndication processes for numerous capital raises on behalf of SEC qualified companies and conducted comprehensive and discerning

research in a wide range of industries while creating company profiles in order to support executives in pitching ideas to prospective clients. Her forward-thinking pragmatism and intuitive interpersonal skills are exceptional.

Ms. Altahawi earned degree from University of Hartford and attained broad knowledge in the capital market, including mortgage lending.

19.    The 2017 10-K discussed the Company's location, stating in relevant part:

The Company principal execution office is 16-017, 85 Broad Street, New York NY 10004.

LongFin Corp., is currently strategically operating its business operation via direct control and coordination from its principal place of business in the City and the state of New York by the Director and Chief Executive Officer, Mr. Venkata S. Meenavalli, the director/ Global Head Executive Officer, Mr. Yogesh Patel and Chief Financial Officer, Mr. Krishanu Singhal.

20.    On December 15, 2017, the Company filed a Form 8-K with the SEC. Attached to the Form 8-K was a press release announcing its acquisition of Ziddu.com, which stated in relevant part:

**New York, NY (December 14, 2017)** - Longfin Corp. (LFIN:Nasdaq) announces the acquisition of Ziddu.com, a Blockchain technology empowered solutions provider that offers Microfinance Lending against Collateralized Warehouse Receipts in the form of Warehouse Coins to small and medium enterprises (SMEs), processors, manufacturers, importers and exporters using crypto currencies across continents.

Ziddu Warehouse Coin is a smart contract that enables Importers and Exporters to use their Ziddu coins that are loosely pegged to Ethereum and Bitcoin Crypto Currency. The Importers/Exporters convert offered Ziddu coins into Ethereum and Bitcoin Cryptocurrencies and use the proceeds for their working capital needs.

Warehouse receipt financing utilizes secured stored goods as loan collateral. Warehouse financing is a secured lending technique that allows SME's access to financing secured by commodities stored in warehouses.

Businesses of all sizes continue to struggle in accessing sufficient credit, resulting in a global trade finance gap of US$1.5 trillion in 2016, according to an Asian Development Bank (ADB). Access to financing is the biggest impediment to small farmers in African countries and other frontier markets. Overall, African micro and SMEs face a financing shortfall of about US$190 billion from the

traditional banking sector. African firms are 19% less likely to obtain a bank loan compared to other regions of the world. Hard-currency shortage is forcing companies to get creative with crypto currencies such as Bitcoin and Ethereum as an alternative to US Dollars in many emerging markets.

"The advent of Blockchain technology has caught the imagination of the global financial services industry; blockchain is emerging as a technological revolution that we believe is set to disrupt the financial services infrastructure. Crypto currencies such as Bitcoin and Ethereum are expected to act as a global financing currency to avail credit against hard currencies of many emerging markets." Says Venkat Meenavalli, Chairman of Longfin Corp.

Ziddu intends to use blockchain technology to transform the lives of millions of SME's by providing finance by way of Ziddu coins and through Crypto Currencies such as Ethereum and Bitcoin against their collateralized warehouse receipts. At the end of the contract, Importers/Exporters are expected to realize their proceeds and pay back their funds through Crypto Currencies only. Depending upon the risk profile of the counterparty, the interest will vary between 12% to 48%.

21.    On March 22, 2018, Longfin issued the press release entitled, "Longfin Corp.

Joins Russell 2000® Index and Russell 3000® Index," stating in relevant part:

New York, March 22, 2018 (GLOBE NEWSWIRE) -- Longfin Corp. ("Longfin" or the "Company") (LFIN), a global FinTech company, has announced that it has been added to the Russell 2000® Index and the Russell 3000® Index, effective March 16, 2018, as part of Russell's quarterly additions of companies with recent initial public offerings.

Russell indices are widely used by investment managers and institutional investors for both index funds and as benchmarks for passive and active investment strategies in the U.S. marketplace.

The Russell 3000® Index measures the performance of the largest 3,000 U.S. companies, representing approximately 98% of the investable U.S. equity market. The Russell 2000® Index measures performance of the small-cap segment of the U.S. equity market and is a subset of the Russell 3000® Index.

Venkat S Meenavalli, Chairman and CEO of Longfin, says "We are pleased that Longfin is included in the Russell 2000® Index. We believe that this inclusion reflects the stockholder value we are building and will help increase Longfin's visibility within the investment community."

22.    The statements contained in ¶¶ 18-21 were materially false and/or misleading

because they misrepresented and failed to disclose the following adverse facts pertaining to the

Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Longfin included several false statements in its SEC filings in connection with its IPO which prompted an SEC investigation, including wrongly representing Defendant Meenavalli's age, location of Longfin's principle offices, and listing Sarah Altahawi as an officer when she did not have that position; (2) Longfin acquired Ziddu.com shortly after the IPO to capitalize on the popularly of blockchain companies in order to manipulate the Company's stock price; (3) Longfin's acquisition of Ziddu.com prompted an SEC investigation; (4) Longfin knew that it was ineligible to be listed on the Russell 2000 and 3000 indices; and (5) as a result of the foregoing, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

23.     On March 26, 2018, Citron Research, a noted short seller, sent a tweet alerting investors that Longfin "is a pure stock scheme" and that an SEC enforcement action should not be far behind as "[f]ilings and press releases are riddled with inaccuracies and fraud." *CNBC* wrote also the article "Shares of cryptocurrency play Longfin drop after short seller Citron calls it a 'pure stock scheme.'"

24.     On this news, shares of Longfin fell $11.82 per share, or 16.6%, to close at $59.28 per share on March 26, 2018, damaging investors damaging investors.

25.     On March 26, 2018, after market hours, The Russell Index issued a release entitled "Longfin Corp (USA): Constituent Deletion Changes in Russell Equal Weight Index Series." stating in relevant part:

LongFin (USA, constituent) was included as an IPO in the Russell 2000 index at the March quarterly update on the basis of its IPO filing of 3 November 2017 which stated that up to 10,000,000 Class A commons shares would be offered. Subsequently, an SEC filing published on 13 February 2018, immediately prior to the Russell US Index rank date of 14 February 2018 for the quarterly IPO additions, confirmed that up to a maximum of 1,140,000 of the shares offered had been taken up by the public. Consequently FTSE Russell has determined that *LongFin failed to meet the minimum 5% free float requirement as at the 14 February cut-off date. In accordance with the FTSE Russell Recalculation Policy and Guidelines, LongFin will therefore be removed from the Russell Indexes on 28 March 2018 (after the close).*

(Emphasis added).

26.    On March 27, 2018, *CNBC* published the article, "Longfin loses more than a third of its value after the controversial cryptocurrency stock is booted from the Russell 2000 index" which discussed Longfin' removal from the Russell 2000, stating in relevant part:

Shares of Longfin plunged for a second straight day after FTSE Russell said it would remove the stock of the small, cryptocurrency play from the benchmark Russell indexes.

Longfin (Ticker: LFIN) closed 41.5 percent lower Tuesday at $34.68 a share. The little-known stock fell 16.6 percent Monday after noted short seller Andrew Left's Citron Research tweeted that Longfin "is a pure stock scheme."

The tiny stock had skyrocketed in December after news it was acquiring a firm focused on the same blockchain technology as bitcoin. Longfin went public in mid-December and announced last week it was added to the small-cap Russell 2000 and 3000 indexes on March 16 as part of FTSE Russell's quarterly additions.

However, FTSE Russell said in a release after Monday's market close that Longfin shares will be removed from the Russell indexes due to insufficient free-floating shares as of Feb. 14. The change is set to take effect after the close Wednesday and will include the Russell 2000 and Russell 3000 indexes.

27.    On this news, shares of Longfin fell $25.57 per share, or over 43.1%, over two trading days to close at $33.71 per share on March 28, 2018, damaging investors damaging investors.

28.     On April 2, 2018, Longfin filed its annual report on Form 10-K for the year ended December 31, 2017 with the SEC (the "2017 10-K"). The 2017 10-K disclosed an SEC probe into this documents related to the IPO and acquisition of Ziddu.com, stating in relevant part:

> On March 5, 2018, the Division of Enforcement of the SEC informed the Company that it is conducting an investigation *In the Matter of Trading in the Securities of Longfin Corp.* and requested that **the Company provide certain documents in connection with its investigation, including documents related to our IPO and other financings and the acquisition of Ziddu.com.** We are in the process of responding to this document request and will cooperate with the SEC in connection with its investigation. While the SEC is trying to determine whether there have been any violations of the federal securities laws, the investigation does not mean that the SEC has concluded that anyone has violated the law. Also, the investigation does not mean that the SEC has a negative opinion of any person, entity or security.

> (Emphasis added).

29.     Further on April 2, 2018, *The Wall Street Journal* published the article, "Up-and-Down IPO Longfin Is Facing an SEC Probe," which discussed the SEC's investigation into Longfin, stating in relevant part:

> Longfin Corp. LFIN -29.98% took advantage of post-financial-crisis rules designed to create jobs and help young companies go public. ***But the financial-technology company, which was valued at $5.4 billion as recently as 10 days ago, is now under investigation by the Securities and Exchange Commission after it failed to disclose important information and left a trail of misstatements behind.***

> Since Longfin's December initial public offering, which raised $5.7 million, the company's price first rose 13-fold, then fell by 80%, all in less than four months. In the run-up to the IPO, the company, which says it operates computer platforms for trading on the Singapore and other stock exchanges, ***failed to disclose important information and misstated facts*** as basic as the age of its controlling shareholder, according to a review of securities filings.

> ***On Monday, the company disclosed the SEC probe*** while also reporting material weaknesses in financial controls. The company, which said it is cooperating with the probe, said it may not be able to continue as a going concern.

> The shares closed Monday down 17% at $14.31, above its IPO price of $5.

Longfin went public using a provision of the Jumpstart Our Business Startups Act of 2012, known as Reg A+. The rules allow companies with less than $1 billion in annual sales to bypass some accounting and disclosure requirements imposed on bigger companies, but they do require accurate reporting.

The other nine Reg A+ IPOs that have listed on U.S. exchanges or been issued over the counter have lost more than half their value on average, Dealogic data show.

Concerns about Longfin shine a light on the apparent ease with which IPOs are being approved under the Reg A+ regime, lawyers said. "Everyone understood we were rationalizing the disclosures [required] but nothing as flimsy as what appears to have happened here," said James Cox, a law professor at Duke University. "We're going to look back on Reg A+ and think this was an experiment that didn't get managed very well."

The SEC gave Longfin the green light to sell shares based on one month's audited financial statements, which showed that 96% of the company's expenses were paid to a company controlled by Longfin's owner, Venkat Meenavalli, an Indian entrepreneur. The company also provided two years of audited statements for a Singaporean subsidiary, which generates most of its revenue.

An SEC spokeswoman declined to comment.

***Mr. Meenavalli, who says he controls 90% of Longfin shares, told The Wall Street Journal he is "based out of Dubai" but intends to spend 15 days a month in the U.S. He said its sole U.S. office space—a small room with three desks and no computers in a shared-office building in downtown Manhattan that was deserted at 9:30 on a recent weekday morning—is temporary. Longfin plans to open a bigger office in New York and is hiring more U.S. employees, he added.***

Mr. Meenavalli rejects any suggestion of financial misconduct, saying short sellers, who have borrowed and sold short almost 15% of the shares available to trade, according to FactSet, are motivated by greed. "They enter into their own fire," he said.

A tiny portion of Longfin shares were sold in the Dec. 13 IPO. ***Two days later, Longfin disclosed that its chief financial officer and chief operating officer had resigned just before the offering. But on the same day, the company said it had acquired a crypto company, Ziddu.com, from a company controlled by Mr. Meenavalli.***

Longfin shares rose more than 1,200% over the next two sessions to a peak value of $72.38.

***Mr. Meenavalli is 48 years old, according to records he confirmed in an interview, although in a May 2017 SEC filing he is listed as 45.*** Described in

that filing as "a financial wizard," his biographies for some earlier companies show him having a computer-science degree from Australia's Suffield University. His Longfin biography lists a diploma in international trade finance from Middlesex University in the U.K.

In SEC filings, Longfin reported it had 20 employees in March 2017. The number dropped to two the following month, rose to 15 in July, fell to three in November and was reported as 18 on Monday. *A filing in July 2017 listed Sarah Altahawi, 23, as a New York-based executive. Ms. Altahawi said Monday she is not a company officer, "so that was a mistake."*

Her father, Andy Altahawi, said she was a secretary. He was issued 2 million Longfin shares for advising on its IPO, according to filings. He said he "managed the SEC process as a consultant" and didn't act as a banker or underwriter. Mr. Altahawi was listed on Longfin's website as a director until September, when the SEC questioned why he wasn't included in the company's filings.

"I'm not a director…never was—what was online was untrue," he said. Mr. Meenavalli said Mr. Altahawi was an officer for two months but then resigned and declined an invitation to join the board.

*At its peak value, Longfin was included for eight trading days in the Russell 2000 small-company stock index, which would draw in some of the $122 billion in funds that follow the index.* Short-sellers said Russell made a mistake because just 1.5% of Longfin's shares traded, below the 5% minimum. Russell said it made the decision based on Longfin's IPO disclosures, which said more shares would trade. Its reversal, announced March 26, sent the shares down 41% the next day.

Mr. Meenavalli told the Journal Friday that the company now has a 7% free float thanks to the unlocking of some IPO shares. Mr. Meenavalli said Russell told him "they are going to include us back."

A spokesman for Russell said Longfin would be assessed like any other company during the next quarterly index update. The spokesman also confirmed that the Journal's calculation, based on available information, that only 4% of the shares are available for trading "is accurate."

Mr. Meenavalli said Longfin "went through a stringent process of [approval by] SEC and Nasdaq" and that its filings are being unfairly judged against the tougher standards set for bigger companies.

(Emphasis added).

30.     On this news, shares of Longfin fell $4.42 per share, or over 30.88%, to close at

$9.89 per share on April 3, 2018, damaging investors damaging investors.

31.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

32.    On March 16, 2018, Longfin was added to the Russell Indices.

33.    On March 23, 2018, an article entitled, "LongFin Popped Because It Was (Probably) Mistakenly Added To FTSE Russell Indices" was published on *SeekingAlpha.com*. The author of the article included an email he received from Longfin's investors relations dated March 21, 2018 which stated, "Longfin's public float is about 1.1 million. The number of Longfin's shares outstanding is 76,540,989."

34.    This email from Longfin's investor relations was sent the day before Longfin issued its press release touting its inclusion on the Russell Indices. Based off the numbers provided, the Company knew that it did not have 5% float prior or since being added to the Russell Indices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Longfin securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Longfin, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Longfin securities were actively traded on

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Longfin;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Longfin to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Longfin' securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Longfin shares met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

- As a public issuer, Longfin filed periodic public reports with the SEC and NASDAQ;

- Longfin regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Longfin was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

42. Based on the foregoing, the market for Longfin securities promptly digested current information regarding Longfin from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Longfin securities during the Class Period.

48.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Longfin were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Longfin, their control over, and/or receipt and/or modification of Longfin's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Longfin, participated in the fraudulent scheme alleged herein.

49.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Longfin personnel to members of the investing public, including Plaintiff and the Class.

50.     As a result of the foregoing, the market price of Longfin securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Longfin securities during the Class Period in purchasing Longfin securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

51.     Had Plaintiff and the other members of the Class been aware that the market price of Longfin securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Longfin securities at the artificially inflated prices that they did, or at all.

52.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Longfin securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     During the Class Period, the Individual Defendants participated in the operation and management of Longfin, and conducted and participated, directly and indirectly, in the

conduct of Longfin's business affairs. Because of their senior positions, they knew the adverse non-public information about Longfin's misstatement of revenue and profit and false financial statements.

56.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Longfin's financial condition and results of operations, and to correct promptly any public statements issued by Longfin which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Longfin disseminated in the marketplace during the Class Period concerning Longfin's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Longfin to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Longfin within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Longfin securities.

58.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Longfin.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 4, 2018                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:/s/Phillip Kim
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com

Counsel for Plaintiff